**SilvermanAcampora LLP**
Attorneys for Iliad Research and Trading, L.P.
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Anthony C. Acampora
Ronald J. Friedman

# UNITED STATES BANKRPUTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>ROBERT FRANCIS XAVIER SILLERMAN<br>aka ROBERT F.X. SILLERMAN,<br>aka ROBERT F. SILLERMAN,<br>aka ROBERT X. SILLERMAN,<br><br>                                        Debtor. | Chapter 11<br><br>Case No. 17-13633 (MKV) |
| ILIAD RESEARCH AND TRADING, L.P., a Utah limited partnership,<br><br>        Plaintiff,<br><br>vs.<br><br>ROBERT FRANCIS XAVIER SILLERMAN<br>aka ROBERT F.X. SILLERMAN,<br>aka ROBERT F. SILLERMAN,<br>aka ROBERT X. SILLERMAN, an individual,<br><br>        Defendant. | Adv. Pro. No. _____ (MKV) |

## **COMPLAINT**

Plaintiff Iliad Research and Trading, L.P., by its attorneys, SilvermanAcampora LLP, hereby complains against Defendant Robert Francis Xavier Sillerman and objects to discharge by commencing this adversary proceeding and alleges as follows:

**JURISDICTION AND VENUE**

1. On December 26, 2017, certain creditors filed an involuntary petition (the "*Petition*") pursuant to chapter 7 of title 11, United States Code (the "**Bankruptcy Code**") against Defendant Robert Francis Xavier Sillerman ("**Sillerman**") in the United States Bankruptcy Court for the Southern District of New York, Case No. 17-13633 (MKV).

2. By order dated March 1, 2018, Sillerman's chapter 7 case was converted to a case under chapter 11 of the Bankruptcy Code.

3. Plaintiff Iliad Research and Trading, L.P. ("**Iliad**") is a Utah Limited Partnership with its principal place of business in Cook County, Illinois.

4. This Court has jurisdiction of this matter pursuant to 28 U.S.C. sections 157 and 1334, and the causes of action alleged herein are core proceedings under 28 U.S.C. section 157(b)(2).

5. Venue is proper pursuant to 28 U.S.C. sections 1408 and 1409.

**BACKGROUND**

6. On or about July 3, 2017, Function(x) Inc. ("**FNCX**") entered into a Securities Purchase Agreement (the "**Purchase Agreement**") with Iliad. A true and correct copy of the Purchase Agreement is attached hereto as **Exhibit A**.

7. Pursuant to the Purchase Agreement, Iliad agreed to purchase a Secured Convertible Promissory Note (the "**Note**") from FNCX for the principal amount of $4,410,000.00, which was convertible into shares of FNCX common stock. A true and correct copy of the Note is attached as **Exhibit B**.

8. At the time FNCX entered into the Purchase Agreement, Sillerman was the chief executive officer and primary stockholder in FNCX.

9. In connection with the Purchase Agreement and the Note, Sillerman entered into a Pledge Agreement with Iliad, which the parties executed the same day as the Note and Purchase Agreement. A true and correct copy of the Pledge Agreement is attached hereto as **Exhibit C**.

10. Sillerman also personally guaranteed FNCX's obligations under the Note. A true and correct copy of the Guaranty is attached hereto as **Exhibit D**.

11. Under the Pledge Agreement, the parties recognized that Iliad had issued the Note to FNCX and entered into the Purchase Agreement.

12. As stated in the Pledge Agreement, Sillerman executed the Pledge Agreement "[i]n order to induce [Iliad] to make certain loans and other financial accommodations to [FNCX] pursuant to the Note" and as "security for performance and payment of all of [FNCX]'s obligations under the Note."

13. Pursuant to the Pledge Agreement, Sillerman granted Iliad a security interest in "all of the issued and outstanding membership interests" of MJX, LLC, a Delaware limited liability company (the "**MJX Interest**"), in order to secure all payment and performance obligations under the Note.

14. In paragraph 4 of the Pledge Agreement, Sillerman represented and warranted that the MJX Interest constituted 100% of MJX, LLC's outstanding equity.

15. Sillerman also represented and warranted that, with the exception of the security interest granted to Iliad under the Pledge Agreement, (a) Sillerman was the sole owner of the MJX Interest and (b) the MJX Interest was not encumbered by any other mortgage, lien, deed of trust, charge, pledge, security interest, or other encumbrance.

16. Sillerman further represented that the Pledge Agreement was "effective to create a valid and continuing first priority Lien on and first priority perfected security interest in" the MJX Interest "in favor of" Iliad, which would be "prior to all other Liens" of any kind.

3

17. In reliance on these representations in the Pledge Agreement, Iliad purchased the Note and executed the Securities Purchase Agreement.

18. On or about July 10, 2017, Iliad received a letter sent on behalf of ESFX Holdings LLC ("**ESFX**"). Sillerman and FNCX also received copies of the letter around the same time.

19. In the letter, ESFX alleged that MJX pledged "certain assets" to ESFX and that Sillerman agreed not to create any lien in the MJX interest. ESFX further claimed that the Pledge Agreement violated Sillerman's agreement with ESFX.

20. Iliad immediately contacted Sillerman to discuss whether the MJX Interest was previously encumbered at the time the parties entered into the Pledge Agreement. In a phone call with Iliad representatives, John Fife and Chris Stalcup, held in mid-July 2017, Sillerman stated that ESFX was mistaken. He explained that the MJX Interest had been pledged to secure a prior loan to ESFX but that the loan had already been paid off. But due to an accounting error or a clerical error on the part of ESFX, ESFX was mistaken about the remaining balance of the loan.

21. Sillerman assured Iliad not to worry and said he would take care of the issue.

22. Sillerman made similar representations in a July 13, 2017 email to Chris Stalcup and John Fife at Iliad. In the email, Sillerman stated that ESFX's claim to the MJX Interest was "a mystery to" him, but he "assure[d] [Iliad] that [it] ha[d] the only pledge related to the MJX P/E portfolio."

23. On December 26, 2017, several of Sillerman's creditors filed the Petition.

24. Sillerman successfully moved to convert the bankruptcy to a chapter 11 proceeding.

25. On March 20, 2018, Sillerman filed a Form 106D with the bankruptcy court (the "**Original Schedule**"). Consistent with his written representations in the Pledge Agreement and the written representations he made on July 13, 2017 to Iliad, Sillerman listed only Iliad in the

Original Schedule as having a claim secured by the MJX Interest. A true and correct copy of the Original Schedule is attached hereto as **Exhibit E**.

26. In reliance on Sillerman's oral and written representations detailed above regarding the MJX Interest, Iliad entered into a Forbearance Agreement with FNCX on April 16, 2018. A copy of the Forbearance Agreement is attached hereto as **Exhibit F**.

27. Pursuant to the Forbearance Agreement, Iliad agreed to "refrain and forbear temporarily from exercising its collection remedies against [FNCX] and Sillerman" for various defaults that had occurred under the Note and Purchase Agreement until July 1, 2018.

28. Iliad discovered in early 2019 that Sillerman's written and verbal statements regarding the MJX Interest were not true.

29. Moreover, at the time Sillerman made such statements, he knew they were not true.

30. On February 8, 2019, Sillerman contacted John Fife, Iliad's principal, via email and informed him that Iliad's security interest in the MJX Interest "sit[s] behind one other secured creditor." In so doing, Sillerman made no effort to explain his prior contradictory verbal and written representations.

31. Sillerman's February 8, 2019 statement is now supported by Sillerman's amended disclosure statement, which for the first time disclosed an $18,000,000 claim by ESFX against the MJX Interest along with Iliad's previously disclosed claim (the "**Amended Schedule**"). A true and correct copy of the Amended Schedule is attached hereto as **Exhibit G**.

32. Sillerman's statements in his Amended Schedule and in the February 8, 2019 email directly contradict the representations he made in the Pledge Agreement, the July 2017 phone call, the July 13, 2017 email, and the Original Schedule.

33. In reliance on Sillerman's representations, Iliad entered into several agreements that benefited Sillerman, including the Note, Purchase Agreement, Pledge Agreement, and the Forbearance Agreement. Pursuant to those agreements, Iliad provided more than $4,000,000 in loans to Sillerman's company, FNCX, which Sillerman personally guaranteed but has never repaid.

34. To date, Sillerman owes $8,122,909.95 in principal and interest on the Note.

## FIRST CLAIM FOR RELIEF
### (For a Nondischargeable Judgment Under 11 U.S.C. § 523(a)(19))

35. Iliad incorporates by this reference the allegations set forth in the paragraphs above.

36. Pursuant to section 523(a)(19)(A) of the Bankruptcy Code, a debt is to be excepted from an individual debtor's discharge if it is a debt for "(i) the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any State securities laws, or any regulation or order issued under such Federal or State securities laws"; or (ii) common law fraud . . . in connection with the purchase or sale of any security; and (B) results before, on, *or after* the date on which the petition was filed, from (i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding." 11 U.S.C. § 523(a)(19) (emphasis added).

37. Sillerman made material misrepresentations that (a) violate state and federal securities law, including 15 U.S.C. section 78j(b) and 17 C.F.R. section 240.10b-5; and (b) constitute common law fraud in connection with the purchase or sale of a security.

38. In particular, Sillerman represented in the July 3, 2017 Pledge Agreement that with the exception of the security interest granted to Iliad, (a) Sillerman was the sole owner of

6

the MJX Interest, and (b) the MJX Interest was not encumbered by any other mortgage, lien, deed of trust, charge, pledge, security interest, or other encumbrance.

39. Sillerman reaffirmed this representation in a July 13, 2017 email with Iliad's principal John Fife and in a mid-July 2017 phone call with Chris Stalcup and John Fife. Sillerman denied ESFX's assertion that it possessed a preexisting security interest in the MJX Interest, claiming it was a misunderstanding resulting from an accounting error or clerical error on the part of ESFX.

40. These statements were false at the time Sillerman made them. In reality, upon information and belief, Sillerman had previously pledged the MJX Interest to ESFX in July 2016 to secure a $15,000,000 loan, which had never been repaid.

41. Further, Sillerman knew at the time he made the statements that they were false. Sillerman filed the Amended Schedule in January 2019 disclosing the ESFX claim to the MJX Interest. And in a February 2019 email to John Fife, Sillerman confirmed that Iliad's MJX Interest was inferior to ESFX's. In so doing, he did not offer any explanation for his prior false statements to the contrary.

42. The MJX Interest qualifies as a security under state and federal law, including 15 U.S.C. section 78c(a)(10).

43. Because Iliad entered into the Pledge Agreement in connection with Sillerman's personal obligations under the Note and Purchase Agreement, it never would have entered into the Pledge Agreement, the Note, the Securities Purchase Agreement, or the Forbearance Agreement with FNCX had it known that Sillerman, upon information and belief, had previously pledged the MJX Interest to ESFX.

7

44. Further, as stated explicitly in the Pledge Agreement, Sillerman made these representations for the express purpose of obtaining loans and other financial considerations from Iliad.

45. Iliad, in reasonable reliance on Sillerman's representations, provided FNCX a loan of more than $4,000,000, which Sillerman personally guaranteed but has failed to repay despite FNCX's breach of its payment obligations.

46. As a result of Sillerman's false misrepresentations, Iliad has sustained damages of at least $8,122,909.95 in principal and interest on the unpaid balance of the Note.

47. Pursuant to Section 523(a)(19) of the Bankruptcy Code, Sillerman is not entitled to a discharge of his debt to Iliad.

## SECOND CLAIM FOR RELIEF
### (For a Nondischargeable Judgment Under 11 U.S.C. § 523(a)(2))

48. Iliad incorporates by reference the allegations set forth in the paragraphs above.

49. Based upon Sillerman's actions, Iliad did not discover until after the deadline to file objections to discharge under 11 U.S.C. section 523(a)(2).

50. Sillerman filed the Original Schedule on March 20, 2017, which identified only Iliad's claim to the MJX Interest.

51. In this respect, the Original Schedule was consistent with the written and verbal representations that Sillerman had made to Iliad in the July 3, 2017 Pledge Agreement, the July 13, 2017 email to John Fife, and the mid-July 2017 phone call described above.

52. Under Federal Rule of Bankruptcy Procedure 4007(c), the deadline to file adversary complaints pursuant to 11 U.S.C. section 523(a)(2) was on or about April 20, 2018, "60 days after the first date set for the meeting of creditors."

53. Almost one year after this deadline, Sillerman filed the Amended Schedule, which disclosed for the first time ESFX's claim to the MJX Interest and revealed the fraudulent nature of Sillerman's written and verbal representations made in July 2017.

54. As set forth herein, Sillerman obtained money from Iliad based upon false pretenses, a false representation, or actual fraud, other than a statement respecting Sillerman's or an insider's financial condition.

55. As set forth herein, Sillerman obtained an extension of credit from Iliad based upon false pretenses, a false representation, or actual fraud, other than a statement respecting Sillerman's or an insider's financial condition.

56. As set forth herein, Sillerman obtained money from Iliad based upon a statement in writing that is materially false, which Sillerman caused to be made or published with the intent to deceive Iliad.

57. As set forth herein, Sillerman obtained an extension of credit from Iliad based upon a statement in writing that is materially false, which the debtor caused to be made or published with the intent to deceive Iliad.

58. Specifically, Sillerman obtained a $4,000,000 loan for his company FNCX, which he personally guaranteed, and an agreement from Iliad to halt collection efforts after FNCX defaulted on its repayment obligations.

59. Iliad would not have provided Sillerman with any of these benefits if not for his misrepresentations that he owned the MJX Interest free and clear of any other liens or encumbrances. Sillerman made these misrepresentations both in the Pledge Agreement and in mid-July 2017 as detailed above.

60. At the time Sillerman made these misrepresentations, he knew they were false. Upon information and belief, Sillerman had in fact previously pledged the MJX Interest to ESFX

to secure a $15,000,000 loan almost an entire year before executing the Pledge Agreement with Iliad.

61. Further, as specifically stated in the Pledge Agreement, Sillerman made these misrepresentations to secure loans and other financial considerations from Iliad.

62. Iliad, acting reasonably and in ignorance of the falsity of Sillerman's misrepresentations, relied on them and delivered $4,000,000 to FCNX, which Sillerman personally guaranteed but failed to repay, and Iliad also agreed to halt collection efforts following FNCX's default.

63. Iliad reasonably relied on Sillerman's oral and written statements.

64. By virtue of the foregoing, Iliad has sustained damages of at least $8,122,909.95 in principal and interest on the unpaid balance of the Note.

65. The debt owed by Sillerman to Iliad is nondischargeable under Bankruptcy Code §523(a)(2).

**WHEREFORE**, Iliad respectfully requests that the Court enter judgment in favor of Iliad as follows:

(a) On the first claim for relief against Sillerman, a nondischargeable judgment pursuant to Bankruptcy Code § 523(a)(19) in the amount of at least $8,122,909.95;

(b) On the second claim for relief against Sillerman, a nondischargeable judgment pursuant to Bankruptcy Code § 523(a)(2) in the amount of at least $8,122,909.95;

(c) Costs and disbursements of the action; and

  (d) Such other and further relief as the Court deems just and proper.

Dated: Jericho, New York
   April 18, 2019        **SILVERMANACAMPORA LLP**
                Attorneys for Iliad Research and Trading, L.P.


           By: *s/ Anthony Acampora*
              Anthony C. Acampora
              100 Jericho Quadrangle, Suite 300
              Jericho, New York 11753
              (516) 479-6300